BEARDSLEY & KIRKLAND *vs.* THE ONTARIO BANK and others.

Locomotive engines, and other rolling stock of a rail road company; the stock, materials, rails, ties and other things on hand for running or repairing the road; the platform scales, tools and implements; and all articles not constituting a part of the road bed, or firmly affixed to the land, or some building which is itself a fixture; including such articles as are usually denominated chattels, but which are annexed by a screw or the like to some building, and which can be removed without detriment to the building, are not embraced in, and will not pass by, a mortgage of the *rail road, real estate, chattels real and franchises* of the company; but are subject to execution, as *personal property.*

THIS was an action to foreclose a mortgage, given by the Black River and Utica Rail Road Company to the plaintiffs, as trustees, to secure the payment of bonds to the amount

of $1,200,000 issued by the company for the purpose of completing their rail road. The mortgage was executed June 21, 1854, and was in its terms a mortgage of the rail road, real estate, chattels real and franchises of the company. The plaintiffs, in their complaint, alleged a breach of the condition of the mortgage, by the non-payment of the interest due upon the bonds. They further alleged that in August, 1857, the Ontario Bank recovered several judgments against the Black River and Utica Rail Road Company, on which executions had been issued to the defendant Hall, as sheriff of Oneida county, who had levied the same on certain property of the rail road company, consisting of locomotives and tenders, passenger, mail and baggage, freight, platform and gravel cars, snow-plows, materials procured and on hand for renewing and repairing cars &c., engines, machinery, tools in the shops of the company, &c., and articles necessary to the repairing, running and operating the road, and the rolling and other machinery, engines, cars, &c. That a part of the said rail road had been completed, and was in use, at the time of the levy, and the said articles of property, so levied on, were purchased for the purpose and with the intent of using the same on the rail road, and were then so used, and were necessary to the use of the rail road for the purposes designed in the creation of the corporation and in the construction of the road. The complaint further alleged that on or about the first day of September, 1857, the defendant, Edmund A. Wetmore, was duly appointed receiver of the said Ontario Bank, and shortly thereafter, and previously to the first day of November in that year, accepted said appointment and gave the security required of him as such receiver, so that he thereby became invested with all the rights, interest and property, which he was entitled to as such receiver as aforesaid, and the same was duly assigned and transferred to him as such receiver. That the defendants, Edmund A. Wetmore, Alexander B. Johnson, Calvin Hall and the Ontario Bank, claimed that said property so levied on as aforesaid was not, nor was any part thereof,

Beardsley *v.* Ontario Bank.

embraced in or subject to said mortgage, but that the same and each and every part thereof, was free from any lien, incumbrance or right, created by, or under and in virtue of, said mortgage; whereas, the plaintiffs alleged the contrary, and insisted that said property, and each and every part thereof, was intended to be, and was embraced in and subject to the lien and incumbrance of said mortgage; and that said levy was of no force or effect, as against the lien and incumbrance of said mortgage, and the right thereby created in favor of the plaintiffs, as such trustees as aforesaid. The plaintiffs made no personal demand of any or either of the defendants, except the said rail road corporation, although they claimed that the defendants, the Ontario Bank, and the president thereof, and the said receiver, as well as said Calvin Hall, the sheriff, should be enjoined and restrained from making any sale of the property so levied on, under and in virtue of the judgments, executions and levy aforesaid.

The plaintiffs prayed for a foreclosure of the mortgage; for a sale of the mortgaged premises; and the application of the proceeds of such sale to the payment of the bonds referred to in, and secured by, the mortgage. They also prayed for an injunction and a receiver.

The defendant, The Black River and Utica Rail Road Company, put in an answer, in which, among other things, it insisted that the property levied on by the sheriff was covered by, and subject to, the mortgage of the plaintiffs, as a lien prior to the executions. The attorney of the rail road company afterwards signed a consent by which it was agreed that the plaintiffs might take a judgment for the foreclosure of their mortgage, and for the sale of the mortgaged premises, &c., whenever the controversy between the plaintiffs and the Ontario Bank, and the sheriff, should be determined. The Ontario Bank put in an answer, in which, among other things, they alleged that the judgments, stated in the complaint to have been recovered by the bank against the rail road company, were each duly recovered and perfected as in that behalf in

said complaint was alleged, and the roll therein filed in the office of the clerk of Oneida county, at the dates in said complaint alleged, and that afterward executions in due form of law upon and for the collection of each of said judgments were duly issued and delivered to the defendant Hall, (who was then and still is the sheriff of Oneida county,) as such sheriff, and that, at or about the time in that behalf in the complaint alleged, the said Hall under and by virtue of said executions, seized, and took into his possession, all the property in the complaint mentioned as having been levied upon, together with all the other property of the defendant, The Black River and Utica Rail Road Company, within the said county of Oneida, and except so far as said property may have been lost, stolen and wasted, the said Hall, as such sheriff, still holds and retains the same, and all thereof, under said levy, and under and by virtue of said executions. And the bank further alleged that each and all of the said property so as aforesaid levied upon, was, prior to, and at the time of the said levy, the property of, and owned by the said defendants, The Black River and Utica Rail Road Company, and was not in any way covered by the said mortgage in the complaint mentioned, and the said mortgage had not been, and was not any lien, incumbrance, or charge thereon, or upon any part thereof, and the plaintiffs had not and have not any right in, lien upon, or claim to the said property so as aforesaid levied upon, or any part thereof, under or by virtue of the said mortgage, or in any other way whatever. And the bank demanded a judgment and decree herein, adjudging and declaring that the property levied upon was not, and is not covered by said mortgage, and that said mortgage was not, and is not any lien, incumbrance or charge thereon, and that the defendants have their costs adjudged to and paid to them.

The action was tried before Judge ALLEN, at Utica, upon pleadings and proofs, in December, 1859, and the following opinion was delivered by him, on giving his judgment therein.

Beardsley *v.* Ontario Bank.

*S. Beardsley, A. Beardsley* and *E. A. Graham,* for the plaintiffs.

*F. Kernan,* for the defendant.

ALLEN, J. The questions litigated in this action are of that character and importance that they will not be definitely settled until passed upon by the court of last resort; especially in view of the fact, that the decisions of the supreme court upon them are not in harmony with each other. The reasons, therefore, which may control my decision, are not important, and will be stated with more brevity than would be proper if it was supposed they were to influence the judgment or action of the parties in interest. There are two cases in our own courts, directly in point, or at least sufficiently so to control this case; and either would be authority obligatory upon me, were the other out of the way. But as the two are antagonistic in all points, I am left to decide which of the two I ought to adopt as a precedent; or, in other words, to decide the case upon my own judgment, without resting upon the authority of adjudicated cases of the like character in our own courts.

The decisions of the courts of other states, upon the effect to be given to mortgages executed by rail road companies of their property and franchises, would not be entirely safe as precedents, for the reason, if there were no other growing out of the peculiar terms of the mortgages and the laws under which they were executed, that the decisions of the several state courts upon the law of fixtures are not uniform. Differences exist in the rules established by the decisions of the courts in the different states for determining what shall, as between the owner of the freehold and third persons, be deemed a part of the realty, and what personalty, removable as such. Many, perhaps most, mortgages given as this was, embrace and include, in terms, much of the property which is here claimed by the execution creditors of the rail road company to be per-

sonal and subject to their execution. Such was the case in the two cases referred to, in our own courts, in *Phillips* v. *Winslow,* (18 *B. Mon.* 431,) and in *Coe* v. *Hart,* decided by Judge McLean, and referred to as reported in *Am. Law Reg.* for November, 1857. In *Cary* v. *The Pittsburgh, Fort Wayne and Chicago Rail Road Company,* referred to by Judge Greene, the mortgage not only included in terms all the property of the company, but that which had been seized by the creditors, or most of it, being rails, had been in use as a part of the superstructure of the road bed, and had been taken up for repair to be relaid again, and the case in that view was directly within the principle by which a mill stone, temporarily removed from its place for sharpening, is held to continue a part of the realty.

The mortgage in this case conveys "all and singular the rail road of the party of the first part, created and constructed, and to be constructed from the city of Utica, in the county of Oneida, and through the county of Lewis to Clayton, in the county of Jefferson, in the state of New York, with the appurtenances thereto belonging; and all the real estate and chattels real, acquired, and now owned by said company, party of the first part, or which shall be hereafter acquired by said party of the first part, situate in the said counties of Oneida, Lewis and Jefferson, together with all and singular the franchises of the party of the first part." It is a mortgage of the "rail road, real estate, chattels real and franchises of the company."

By the rail road is intended the road bed and track, with its superstructure—all that enters into and forms a part of a *completed* road. No more is conveyed under the terms "rail road, real estate and chattels real," than would have been conveyed under a description of the road way and other lands of the company by metes and bounds, with the appurtenances, except as to the after acquired property, which was not at the time of the mortgage susceptible of a description by metes and bounds, or in any other way.

Beardsley *v.* Ontario Bank.

Under this general description, after acquired property of the company, coming within its terms, would pass. (*Seymour* v. *Canandaigua and Niagara Falls R. R. Co.*, (25 *Barb.* 284.) But as a mortgage of real estate, no more would pass than by a description of the same property by metes and bounds; that is, nothing but realty would pass. It matters not whether a mill is conveyed as a mill *eo nomine*, or the land upon which it stands is conveyed by any apt and proper description with the mill upon it. (*Le Roy* v. *Platt*, 4 *Paige*, 77.) The question is always, whether the particular piece of property in controversy is, under the circumstances, a part of the land, and if so, is it included in the conveyance, unless expressly excepted. (*Mott* v. *Palmer*, 1 *Comst.* 564.) If the property in controversy in this action, when put upon the road and applied to the uses of the company, became a part of the realty, then it is covered by the mortgage, whether acquired before or after the mortgage was given. The mention of the franchises of the company, in the mortgage, does not make that real, which, but for the use of that term, would be personal property, and does not extend the effect or operation of the other terms employed to designate the tangible property intended to be mortgaged. The corporate privileges and powers conferred by law upon the corporation, or rather upon the individuals who are created and made a body corporate and politic, are designated by this term.

Franchises are classed among the incorporeal hereditaments, although they have no inheritable quality. These special privileges, to the extent authorized by law, may be transferred by way of mortgage; but they are not transferable, except in virtue of some statute. But whatever may be the effect of the word in this conveyance, as conferring any right upon a grantee under the mortgage, it is evident that nothing tangible, no corporeal hereditament, is included within or conveyed by that term. Aside from the right of eminent domain, which, to a certain extent, and to enable them to acquire the title to real property, is delegated to rail road corporations, I

think of no privilege enjoyed by them which might not be exercised by individuals without express permission from the government. The carriage of persons and property, by railway, is a business open to all who can acquire title to the roadway, and construct and equip the road, and the fact that a rail road for the purposes to which they are applied, is deemed to be so far public, or for public purposes, as to justify the delegation of this right of acquiring property upon making just compensation to the owner, without his consent, does not affect the character of the property which a rail road company may acquire.

There is no public policy or public interest involved, which would call upon courts to hold that to be land or a part of the realty, which would not be land owned and used by an individual under the same circumstances. The special privileges of the companies constructing rail roads under a charter or corporate organization, are prescribed and defined by the laws under which they are formed; and none are to be taken by them by implication, or from any real or supposed necessity or public interest, unless the powers are necessary to the accomplishment of the main purpose for which they are incorporated. No powers, and no privileges, other than those expressly conferred or necessarily implied, can be exercised by them. The power to take from the owner, against his consent, upon making compensation, property, which is ordinarily treated and considered as personal, in order to construct or equip the road, would not exist, unless expressly conferred. It does not necessarily result from the power given to take land, and construct and operate a road. So, too, the privilege of holding property as real property, and thus exempt from sale as personal property on executions, which, in other hands, when used for a like purpose, would not be so considered, is not conferred by any statute, and therefore does not exist. If public policy, or the public good, requires a departure from the rules of the common law in the classification of property owned by individuals or corporate proprietors of rail

Beardsley v. Ontario Bank.

roads, it is for the legislature, not for the courts, to make the innovation.

All that the courts can do, is to apply the principles of the common law to new species of property, as they come into existence, and to members and business enterprises as they arise. In this state, courts are admonished, if not enjoined, by the legislature, not to interfere with what of uniformity there may be in the classification of property into real and personal, or add to the exceptions which have already been engrafted upon the general rule by which personal is distinguished from real property. It was deemed essential by the revisers that the same legal character should be given to an article, without reference to the parties in controversy, and with that view the rule was altered as between heir and executor, to the prejudice of the former, to conform to that existing between landlord and tenant, which was the most liberal in favor of holding articles that were not firmly annexed to the realty, to be personal and removable, without the consent of the owner of the freehold. To carry out this view, "things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house, so as to be essential to its support," go to the executor and not the heir. (2 *R. S.* 82, § 6, *sub.* 4. 3 *id.* 2d ed. 639, *App.*)

The rule, as between vendor and vendee, and mortgagor and mortgagee, had been the same, if not taken from that which had existed between heir and executor, and this statute, if it did not work a corresponding change as between those parties, "certainly indicates any thing but a legislative intent to enlarge the rights of freehold." (*Per Cowen, J.* 20 *Wend.* 654.) Johnson, (Ch. J.) of the court of appeals, in speaking of the same statute, says, "When the statute gives a particular species of property to the executor, and gives lands, tenements and hereditaments to the heir, it should be regarded, at least, as furnishing very clear proof that in the legislative mind, that kind of property is considered as not being in any sense included in lands, tenements or hereditaments." (*Murdock*

v. *Gifford,* 18 *N. Y. Rep.* 32.)    Judge Strong is of the opin-
ion that the common law, as between vendor and vendee, is
not altered by that statute. (*Farmers' Loan and Trust Co.
v. Hendrickson,* (25 *Barb.* 489.)    The chancellor, in applying
and giving effect to the statute, in *House* v. *House,* (10 *Paige,*
158,) held that it was still necessary to go back to the com-
mon law, to the decisions of the courts, for the purpose of as-
certaining what is a substantial part of the freehold, or what
is a mere fixture or thing annexed to such freehold.    Property
of the latter description he would have held as personal, and
as belonging to the executor.    If the property in controversy
here is " annexed to the freehold," either actually or construc-
tively, for the purposes of trade or manufacture, then within
this statute it is not subject to the mortgage as real property ;
if the statute does not apply and control, but simply prescribes
a rule of adjudication to cases within the same reason, it would
seem the same conclusion should follow. / If not annexed in
some way, then it certainly cannot be included in the mort-
gage as a part of the land. ) The property claimed by the
mortgagees, in hostility to the judgment creditors of the Black
River and Utica Rail Road Company, as included in the mort-
gage and as a part of the realty, consists mainly in the loco-
motives and tenders, passenger, mail and baggage, freight,
platform and gravel cars, snow plows, materials procured and
on hand for renewing and repairing the superstructure of the
road and repairing cars, &c., engines, machinery, tools in
the shops of the company, and in and about the making
and repairing cars, and generally in doing the work of the
company, and articles necessary to the repairing, running
and operating the road, and the rolling and other machinery,
engines, cars, &c.    With the exception of the stationary
engine and some of the property in the shops of the com-
pany, which appear to be annexed in some way to the build-
ing and land, a literal reading of the statute would give
the property to the execution creditors, as against the
mortgagees.    The property, if annexed at all, is so annexed

Beardsley *v.* Ontario Bank.

for the purposes of trade. But as the statute does not in terms embrace the case of vendor and vendee, and may not have been authoritatively decided to apply to that class of cases, although that would seem to be the mind of the court of appeals, the decision may perhaps more properly be placed upon the common law rules. The inquiry will be then, whether the articles seized and claimed by the sheriff, are chattels, fixtures, or a part of the realty. If they are chattels or fixtures, then they were removable, as against the owner of the land, by any one having a claim to them, and were subject to execution against the company as personal property.

The mortgagees occupy the same position that the rail road company would occupy, had there been an attempt to separate this property from the land and sell it as personal property, and no mortgage had been given. If the company in that case could not maintain that it had become and was a part of the land, then the plaintiffs cannot, now. That is, if it is land, as between the mortgagee of the debtor and the execution creditor, then it is as between the debtor and creditor; and yet had the controversy been always between the pursuing creditors and the debtor company, there would hardly have been any conflict in the decisions. That all the articles were chattels personal before they were brought to, and placed upon the road, or the lands of the company, is not disputed; and if they have not by annexation, actual or constructive, lost that character, they must be so treated, for I know of no other way in which personal property can become real and a part of the land; and there may be an annexation without making this change in the legal character of the property. If it is annexed as a mere fixture, then it is removable, and to be treated as personal for all purposes. Fixtures are personal chattels annexed to land, which may be severed or removed by the party entitled to them, against the will of the owner of the freehold. "The term fixtures is one denoting the reverse of its name." The general rule is that all things which are attached to the freehold or annexed to the land, become a

part of it, if the annexation be made firmly and with an in-
tention that it shall be permanent.     Exceptions have been
engrafted upon the rule, for the benefit of trade and manufac-
ture, from time to time, and these have been most usually in ·
favor of tenants as against their landlords.     Annexation in
some form is necessary to constitute that a part of the land
which is ordinarily personal property.     The annexation in
some cases is by gravitation alone, but then the thing so an-
nexed is, in most cases, either a part of some machine, the
principal part of which is actually annexed to some building,
fastened or let into the soil, or is necessary to complete a
building, or to the occupation of the land for the purposes of
the trade to which it is adapted and has been appropriated. ·
With a few special exceptions, such as locks, keys, bars, mov-
able shutters, blinds, &c. which are all necessary to complete
the building to which they are fitted ; charters, deeds, &c., and
the box or chest in which they are contained ; fish in a fish
pond ; rabbits, &c., in a warren ; deer in a park, &c., which
all go with the inheritance as heir looms, and which are con-
sidered as annexed and necessary to the enjoyment of an in-
heritance ; chattels in order to lose their characteristics as
personal property, must at least be so far fixtures that they
are permanent in one place. ( The very idea of a fixture is of
a thing fixed or attached to something as a permanent append-
age, and implies firmness in position. ) But that which be-
comes by annexation a part of the soil is something more than
a fixture, and requires at least as much permanence as to con-
stitute a fixture.     The maxim, *Quicquid plantatur solo, solo
cedit,* which tersely expresses the principle, makes the affixing
of the chattel to the soil the test by which it is declared to
belong to the soil. ( Hence, courts, in determining the ques-
tions that have arisen, have looked at the mode and intention
of annexation, the object and customary use of the thing an-
nexed, and in determining the intention, the character of the
claimant has had its weight. ) But fitness and adaptation and
intention to annex, without actual or constructive annexation,

does not make a chattel a part of the realty. A man may have the rafters, doors and windows made to fit precisely his house and the positions they are respectively to occupy, and brought to the ground; but until actually put and affixed in and to the house, and thus made a part of it and the land upon which it stands, they remain personal property. When once attached, they may be removed for temporary purposes without destroying their character as a part of the realty. It would be a vain work for me to undertake that which more able judges have avowed an inability to do, to wit, to review all the cases in which the question has arisen under greatly differing circumstances, and in almost every variety of form, and reconcile the apparent conflict of decisions, and deduce from all a certain rule, easy of application, and to which every case may be made to conform.

It is suggested that the articles claimed under the mortgage passed as incident to and accessory to the principal thing granted, and as a part of the means to obtain it and all the fruits and effect of it. It is well settled that where any thing is granted, all the means to enjoy it and the incidents and accessories pass with it. As by a grant of ground, a grant of way to it; by a grant of trees, the power to cut them; by a grant of mills, the waters, flood gates, and the like, that are of necessary use to the mill. (1 *Shep. Touch.* 89, 90. *House* v. *House,* 10 *Paige,* 158. *Babcock* v. *The Western Rail Road Co.,* 9 *Met.* 553.) But divers things, that, by continued enjoyment with other things, are only appendant to others, as warrens, leets, waifs, estrays, and the like, will not pass by the grant of those other things. (1 *Shep. Touch.* 89. *Archer* v. *Brumul,* 1 *Lev.* 131.) If the thing claimed is a means of enjoyment of the thing granted, as a right of way or other easement over the other lands of the grantor, the only question is whether the right claimed is necessary. If it is claimed as a part of the thing granted, because necessary to the usual and profitable employment of the thing granted, and adapted to its use, the question is whether it is affixed and made a

substantial part of the freehold, or is a mere annexation for the purpose of trade or manufacture, as in the latter case, it would not be included in the grant. (*Murdock* v. *Gifford,* 18 *N. Y. Rep.* 28.) Actual physical annexation is not claimed here as to most of the property in controversy, but a constructive annexation resulting from the fitness and necessity of the articles, to the right use of the main thing. The examples given of constructive annexation, which alone will supply the want of actual annexation, are the stone of a mill taken out to pick it; keys, locks, doors, &c., sails of a wind mill, windows, &c. (*Grady's Law of Fixtures,* 15.) These examples take the place of a definition, in terms, of a constructive annexation, and the chattels which become realty by constructive annexation must belong to the same class or come within the reasons which control in such cases. "They must be such as go to complete the building or machinery which is affixed to the land, and which, if removed, would leave the principal thing incomplete and unfit for use." In order to pass as an accessory of that which is confessedly realty, it would be accessory to it, and not to a matter of a personal nature. A fire engine was considered as an accessory to the carrying on of the trade of getting and vending coals from the land, a matter of a personal nature, and therefore is not a part of the realty. (*Lawton* v. *Lawton,* 3 *Atk.* 13. *Lord Derby* v. *Lord Ward,* 1 *Amb.* 13.) The carrying of passengers and freight is a matter of a personal nature, to which, and not to the rail road as realty, the "locomotives, cars, &c., are accessory." C. J. Shaw, in *Winslow* v. *Merchants' Ins. Company,* (4 *Met.* 314,) after speaking of the difficulty of laying down a general rule, says, "In general terms, we think it may be said that where a building is erected, as a mill, and the water works of steam works, which are relied upon to move the mill, are erected at the same time, and the works to be driven by it are essential parts of the mill, adapted to be used in it and with it, though not at the time of the conveyance, attachment or mortgage, attached to the mill, are yet parts of it, and pass

with it by a conveyance, mortgage or attachment." In the same case it was decided that all articles of stock, such as iron and coal, and all materials to be wrought, and the hand tools and all implements not driven by the steam engine, and articles not annexed to the building nor embedded in the ground, nor *constituting parts* of such mill, were to be deemed personalty, and not realty. This is, I think, the extent of the rule of constructive annexation. Broom, in his Legal Maxims, page 190, says, " It is not sufficient that the article in question merely rests upon the soil, or upon such foundation ; unless there be annexation, no difficulty can under any circumstances occur." Lord Mansfield held that salt pans, put in salt works by the ancestor, went to the heir as part of the inheritance, and not to the executor. He put the decision upon the ground that the owner erected them for the benefit of the inheritance, and could never have intended to give them to the executor. These salt pans were fixed with mortar to a brick floor, and there were furnaces under them. (*Lawton* v. *Salmon*, 1 *H. Black.* 259 *in notes.*) This has been called a mixed case of an erection, for the benefit of trade, as well as of the inheritance, and effect was sought to be given to the intent of the owner. The cases of *Farrar* v. *Stackpole*, (6 *Greenl.* 157,) *Voorhees* v. *Freeman*, (2 *W. & S.* 116,) and *Pyle* v. *Pennock*, (*Id.* 300,) so far as they dispense with annexation of chattels to the soil or building, as an essential requisite to change the character of a personal chattel, and make such change to depend upon the fitness and adaptation of the article to the purposes for which the real estate is used, are opposed by the decision of our own courts. Perhaps they may be reconciled to our decisions, but not upon any principle which could affect this case. The American editor of Smith's Leading Cases, is of the opinion that the doctrine of the Pennsylvania court must prevail, if at all, by its own authority, since in all the cases in which chattels have been elsewhere treated as fixtures, there has been some annexation, although in some instances slight in its character, to the pre-

mises on which they were placed. (2 *Smith's Lead. Cases, Law Lib. ed.* 169, *top paging.*) The cases of water wheels, mill stones, running gear and bolting apparatus of a grist and flouring mill, which in *House* v. *House,* (*supra,*) were held to be constituent parts of the mill, is not an exception to the rule requiring some annexation. The frame work and foundation upon which the water wheel rests, and upon which it turns upon its axle, is necessarily a part of a building, or embedded in the soil, and that and the wheel are made for each other, and both are parts of the completed building and essential to it, and all the gearing connected with it form a part of the same machinery. It all has a permanent and fixed position. It is stationary, not movable, in one place to-day and another to-morrow ; and see *Le Roy* v. *Platt,* (4 *Paige,* 77.) While rails, before made into a fence, are personal property, when in a fence attached to the land, they become a constituent part of it, as do hop poles, although temporarily removed from the ground to gather the crops. But in both cases they are deemed attached to the land. (*Mott* v. *Palmer,* 1 *Comst.* 564. *Bishop* v. *Bishop,* 1 *Kern.* 123. *Goodrich* v. *Jones,* 2 *Hill,* 142.)

There are peculiar reasons why fences should be deemed a part of the freehold, without regard to the particular mode of their attachment to the soil. Immemorial custom, if nothing else, would make a fence, whether a Virginia fence or a fence actually embedded in the soil, a part of the realty. Fences have always, and by universal consent, passed with the land, as much as the houses upon it. But not so as to the rolling stock of a rail road. There is no such custom, and in a grant of a rail road with its stock a careful conveyancer would schedule the rolling stock, and grant it as such. *Walker* v. *Sherman,* (20 *Wend.* 636,) is a leading case in our own courts, and after a full review of the reported cases, it was held that the parts of a machinery belonging to another party, which were not in any manner affixed or fastened to the building, or to the land, was personal and not real property. The general

rule to be deduced from that case is, that whatever its use or object, unless the thing be physically annexed to the freehold in some way, it will not pass under a grant of the land from vendor to vendee, while the cases of constructive annexation, where the article is seldom or never corporeally attached to the realty, are few, and may be set down as exceptions to the general rule. (*Id.* 646, *per Cowen, J. Whiting* v. *Braston,* 4 *Pick.* 311.) The Virginia fence, and manure in the barn-yard, are placed among the exceptions. *Murdock* v. *Gifford,* (18 *N. Y. R.* 28,) reaffirms and applies the doctrine of *Walker* v. *Sherman,* and holds that looms in a woolen factory, connected with the motive power by leathern bands, not otherwise annexed to the building than by screws holding them to the floor, which kept them steady while working, and which could be removed without injury to themselves or to the building, are chattels, and not a part of the realty. If that case was well decided, (and it was well considered, and at least is binding upon me,) then but little of the property in controversy here was or is a part of the realty, and covered by the mortgage. The looms are distinguishable from the cars and rolling stock of the rail road in this, that they were permanently placed, although not strongly affixed, while the rolling stock of the road was incapable of permanence, or of being affixed or annexed in any one place, but was intended for locomotion. Its whole use is in its locomotive facilities. The term by which it is ordinarily designated, "rolling stock," implies the very reverse of annexation and a permanent fixture. It is essential to the successful operation of the rail road, but not a part of the rail road itself. It is an accessory to the trade and business of the road, and not to the road itself. The road is completed when the bed is graded, the superstructure laid, the rails put down, and every thing is ready for the reception of the locomotives and cars ; it is equipped when the rolling stock and all other necessary appliances and facilities for business are finished and put upon it for use. The company can then commence the trade of carrying pas-

sengers, to which the cars are necessary and accessory. The road and its equipments are as distinct as the store of the merchant and the stock of goods upon the shelves. I concur fully in the manuscript opinion of GREENE, J. in *Stevens* v. *The Buffalo and N. Y. City R. R. Co.*(*a*) presented me. The locomotives, therefore, and all the other rolling stock of the company—all the stock, materials, rails, ties, and other things on hand for running or repairing the road, the platform scales, and all the loose tools and implements levied upon, and all the articles not constituting a part of the road bed, or firmly affixed to the land or some building which is itself a fixture, including such articles as are usually denominated chattels, but which are annexed by a screw or the like to some building, and which can be removed without detriment to the building—were properly seized by the sheriff. The steam engine, with the boiler and machinery connected therewith, and making a part of it and necessary to it as an engine, is real property, and subject to the mortgage. (*Richardson* v. *Copeland*, 6 *Gray*, 536.)

Judgment will be given accordingly, to be settled in detail upon a further hearing of the parties as to particular articles claimed by them respectively.

[ONEIDA SPECIAL TERM, December 27, 1859. *Allen*, Justice.]

(*a*) Reported, ante p. 590.