George V. Hoyle et al., Trustees, etc., Respondents, *v.* The Plattsburgh and Montreal Railroad Company, Samuel F. Vilas, Appellant, et al.

The rolling stock of a railroad is not a part of the realty, but retains its character as personal property.

A mortgage, including its rolling stock, executed by a railroad corporation under authority of the general railroad act of 1850 (§ 28, chap. 140, Laws of 1850) was prior to the passage of the act of 1868 (chap. 779, Laws of 1868), exempting it therefrom in certain cases, subject to the provisions of the act requiring mortgages of personal property to be filed when not accompanied by an immediate delivery, etc. (chap. 279, Laws of 1833). And such a mortgage, not filed as prescribed by said act, was void as against creditors of the corporation. (Reynolds, C., dissenting.)

*It seems* that, for the purposes of said act, a railroad corporation is to be deemed resident in all the towns and cities in which any part of its line is located.

The office of director of a railroad company is fiduciary in its character, and, in consequence, a director is incapacitated from dealing, in his own behalf, in respect to the corporation property or in respect to any matters involving his powers and duties as such director.

This incapacity is not limited to the particular times when he is acting as director, but continues during the period of his directorship.

A director, therefore (considering that relation only), cannot become purchaser of the property of the corporation upon a sale under an execution against it, except subject to its right to disaffirm and to demand a resale. Actual fraud or actual advantage in such case need not be shown. Where, however, the director is also an execution creditor, he has the right to sell under his execution.

But, whether at such sale or at a sale under a prior execution he can purchase to protect his own right and hold absolute against the company, *quere.*

The P. and M. R. R. Co. executed two mortgages of its real estate, equipments, etc., to trustees for bondholders. The mortgages were not filed as chattel mortgages. Various judgments were subsequently obtained against the company, including one in favor of defendant, and who was one of its directors. The rolling stock of the company was sold under executions issued upon these judgments and he became the purchaser. Plaintiffs, as successors of the original trustees, brought this action to foreclose the mortgages. *Held,* that the mortgages, so far as they affected the rolling stock, were void as to creditors (Reynolds, C., dissenting); that conceding V. could not purchase and hold the property absolutely, as against the company, plaintiff had no equitable right until after all the judgments were satisfied; and as their case was not based upon any such ground, the court was not called upon to consider what might have been their rights upon an offer to pay up the judgments as a condition of a resale, and that plaintiffs had no liens upon the property or rights therein that could be enforced in this action.

(Argued January 13, 1873; decided June term, 1873.)

Appeal from order of the General Term of the Supreme Court in the first judicial district, affirming an order of Special Term, the substance of which order is hereinafter set forth. (Reported below, 51 Barb., 45.)

This action was brought to foreclose two mortgages, each for the sum of $200,000, made by the Plattsburgh and Montreal Railroad Company, and conveying its railway, corporate and other franchises and equipments, to the same persons, in trust for the benefit of bondholders.

The defendant, Vilas, alleged in his answer, in substance,

that the mortgages had never been filed as chattel mortgages, and that the *rolling stock* had, intermediate the giving of the mortgages and the commencement of this suit, been sold on execution and purchased at a sheriff's sale, under judgments in his favor and assigned to him.

Thereupon the decree (made by consent of the parties) directed a sale of the mortgaged lands, railroads, buildings, docks, franchises, etc., but ordered the referee before selling the rolling stock and personal property claimed by Vilas to inquire whether it or any part of it was subject to the lien of the said two mortgages or either, and which of the same.

The referee reported in respect to the matters so at issue between the plaintiff and Vilas:

1. That the mortgages were and are valid and subsisting mortgages, and were made as alleged in the complaint, and covered the equipment, etc., of said company belonging to it at the time of the execution of the same respectively.

2. That the mortgages never were filed as chattel mortgages.

3. That the rolling stock was sold on execution, and bought in at such sale by Vilas, as alleged in his answer, and that he was at the time a director of the company.

4. That Vilas was, at the time, and long before and since, and indeed ever since the organization of the railroad company had been, a director of the same, and knew at the time of his purchase that said mortgages had been made.

5. That the whole rolling stock had cost him, including some taxes and other expenditures on account of it, $10,658.88.

6. That he had received for the sale of some, and the rent of other portions of it, $16,317.74, over and above all his expenditures in the purchase of the rolling stock or on account thereof.

7. Leaving him with a surplus of money on hand, over and above all his expenditures, of $5,658.86, besides that part of the property still undisposed of.

8. That after the purchase by Vilas the railroad company,

and afterwards Edward V. Price, their lessee, and, still later, the receiver appointed in this suit, hired the rolling stock in question from Vilas and paid him rent therefor.

And thereupon the referee found as *conclusions of law*:

9. That the mortgages covered all the personal property of the company except four platform cars, but, not having been filed as chattel mortgages, were void as to judgment creditors.

10. That the railroad company had an equitable right to redeem from Vilas the property purchased by him, by reason of his being a trustee at the time of such purchase, though such right was "materially modified" by afterward hiring the property from him.

11. That such right could be claimed and exercised by the plaintiffs as mortgagees of the property in question. But,

12. That such property ceased, upon its purchase by Vilas, to be "subject to the lien" of the plaintiffs' mortgages. And

13. That the plaintiffs have no lien thereon.

The plaintiffs excepted to the conclusion that the mortgages were void as against creditors for want of filing, and to the *final* conclusions of law above stated.

The executions under which the property was sold amounted to over $26,000.

Upon hearing of the plaintiffs' exceptions at Special Term they were allowed, and it was decided that the rolling stock, excepting the four platform cars, was subject to the lien of the mortgages, and it was ordered that it be sold and the proceeds be disposed of in like manner as if the same were proceeds of the railroad and lands.

*Samuel Hand* for the appellants. A corporation remains *in esse* until judicially dissolved, and may be sued and its property taken and sold on execution. (*Mickles* v. *Rochester City Bank*, 11 Paige, 118; *Bank of Niagara* v. *Johnson*, 8 Wend., 645; *Troy and Rutland R. R. Co.* v. *Kerr*, 17 Barb., 581; *People* v. *Bk. of Hudson*, 6 Cow., 217; *Att'y-Gen'l* v. *Bk. of Niagara*, Hopk., 354; *Harris, Sh'ff,* v. *Thompson*, 15 Barb., 62.) The rolling stock of a railroad is personal

property, and, as such, subject to levy and sale on execution. (*Prov. Gas Co.* v. *Thurber*, 1 R. I., 22; 2 Abb. N. Y. Digest, 414; 3 id., 146; *Stevens* v. *Buff. and N. Y. C. R. R. Co.*, 31 Barb., 590; *Beards* v. *Ontario Bk.*, id., 619; 49 id., 299.) A permanent annexation to the freehold is necessary to constitute personal property a fixture.    (20 Wend., 636; 2 Kern., 170; 18 N. Y., 28; 20 id., 344; Bing. on R. E., 453; *Gale* v. *Ward*, 14 Mass., 352.)    The mortgages being, in respect to the rolling stock, chattel mortgages, and not being filed or registered as such, are void as against judgment creditors. (4 Stat. at Large, 435, § 1; *Ely* v. *Carnley*, 19 N. Y., 497, 499; *Thompson* v. *Van Vechten*, 5 Abb., 458.)    A corporation is deemed to have a residence at its place of business. (*Pond* v. *H. R. R. R. Co.*, 17 How., 543; *Conro* v. *Nat. Prot. Co.*, 10 id., 403; *Louisville R. R. Co.* v. *Letson*, 2 How. U. S., 479; 2 Abb. N. Y. Dig., 132.)    Mr. Vilas, although a stockholder and director of the road, was not an agent or trustee, and had a right to purchase the property at a sale on execution.    (*Mickles* v. *Rochester City Bank*, 11 Paige, 127; *People* v. *Fulton*, 11 N. Y., 94; *Roberston* v. *Bullions*, 11 N. Y., 243; *Cammeyer* v. *U. G. L.*, Chs., 2 Sandf. Ch., 186; *Bikell* v. *M. S. and N. I. R. R. Co.*, 22 N. Y., 258; *D. Bap. Soc.* v. *Clap*, 18 Barb., 35; 1 R. D., 601, § 9; Ang. and A. on Corp., chap. 9, §§ 276, 279, 280, etc.; *Lawrence* v. *Gibbard*, 41 Barb., 574.) The road was chartered under the general railroad act of 1848, and no power is conferred on an individual director. (Laws 1848, 221; *Nat. Bk.* v. *Norton*, 1 Hill, 572, 579; *Soper* v. *Buff. and R. R. R. Co.*, 19 Barb., 310; *Thompson* v. *The Sixpenny Savings Bk. of N. Y.*, 5 Bosw., 293; *St. Nicholas Ins. Co.* v. *Howe*, 7 id., 450; *Smith* v. *Lansing*, 22 N. Y., 520; 37 id., 320.)    The railroad company has no right to claim the benefit of the purchase made by Vilas.    (*Debson* v. *Racy*, 8 N. Y., 216; *Hawley* v. *Cremer*, 4 Cow., 717; Story on Agency, last part of § 210; *Bostwick* v. *Atkins*, 3 Coms., 53, 60; *Jackson* v. *Walsh*, 14 J. R., 406, 411, 412.)

*John N. Whiting* for the respondents.   The P. & M. R. R.
Co. was authorized, to secure the payment of its bonds, "to
mortgage its corporate property and franchise for completing,
finishing or operating their railroad."   (Laws 1850, chap. 140,
§ 28, subdivision 10.)   The issue of bonds, under this statute,
carries with it the assurance that the lien covers all the real
and personal property of the road as an entirety for success-
ful operation as a railroad.   (*Seymour* v. *Can. and N. F. R.
R. Co.*, 25 Barb., 308 ; *Howe* v. *Freeman*, 14 Gray, 566 ;
*Commonwealth* v. *Smith*, 10 Allen, 448 ; 2 Redf. on Railways,
680, 681, 704.)   The statutes which declare chattel mortgages,
unaccompanied by possession, void as against creditors, do not
apply to the rolling stock of railroads.   (*People* v. *Utica Ins.
Co.*, 15 J. R., 381 ; *Pierce* v. *Emery*, 32 N. H., 504 ; *Rex* v.
*Severn and Wye R. R. Co.*, 2 B. & Ald., 646 ; *Rex* v. *East-
ern Co. R. R.*, 10 Ad. & El., 531 ; *Rex* v. *S. Wales R. Co.*,
14 id., N. S., 902 ; *Clark* v. *Washington*, 12 Wheat., 46, 54 ;
*Winchester and L. T. Co.* v. *Vimont*, 5 B. Munroe, 1 ;
*Arthur* v. *Comm. and R. R. Bank*, 9 S. & M., 394 ; 13 S.
& R., 210 ; 9 Watts & S., 27 ; 5 id., 265.)   The rolling stock
on this railroad was not personal but real property.   (*Minn.
Co.* v. *St. Paul's Co.*, 2 Wall., 609 ; *Murdock* v. *Gifford*, 18
N. Y., 28 ; *Potter* v. *Cromwell*, 40 id., 287 ; *Voorhees* v.
*McGinnis*, 48 id., 278.)   A director of a corporation is a
trustee for it, and cannot speculate upon its property to the dis-
advantage of his associate directors.   (1 Kern., 266 ; *Cum-
berland Coal Co.* v. *Sherman*, 30 Barb., 571 ; *Oliver* v. *Pratt*,
3 How. U. S., 333 ; *Davone* v. *Fanning*, 2 J. Ch., 252 ;
*Michaud* v. *Girod*, 4 How. U. S., 554, 555 ; *Wormley* v.
*Wormley*, 8 Wheat., 421 ; *Hawley* v. *Cramer*, 4 Cow., 736 ;
*Reed* v. *Warren*, 5 Paige, 650 ; *Torry* v. *Bk. of Orleans*, 9
id., 649 ; *Van Epps* v. *Van Epps*, id., 241 ; *Case* v. *Abel*, 1
id., 393 ; *Stiles* v. *Burch*, 5 id., 132 ; *Cram* v. *Mitchell*, 1
1 Sand. Ch., 251 ; *Van Horn* v. *Fonda*, 5 J. Ch., 588 ; *Evert-
son* v. *Tappan*, id., 497 ; 2 Redf. on Railways, 332 and note .
*Kimmel* v. *Stoner*, 18 Pa., 155 ; *Benson* v. *Heathorn*, 1 Y. &
C., 326 ; *Gr. Luxemberg R. R.* v. *Magnay*, 25 Beav., 586 ; 2

R. S., 5th ed., 500, § 4, title 4, chap. 18, part 1.) The purchase of the rolling stock by Vilas was voidable by plaintiffs as prior mortgagees. (*Iddings* v. *Bruen*, 4 Sand. Ch., 277.) The hiring of the stock from Vilas, by the railroad company, did not preclude it or Vilas from redeeming. (Lewin on Trusts, 8 L. L. N. S., 391 ; 30 Barb., 575.) If the mortgages are regarded as chattel mortgages they are good against Vilas, because he had notice of them. (*Gregory* v. *Thomas*, 20 Wend., 17; *Sanger* v. *Eastwood*, 19 id., 514 ; *Hill* v. *Beebe*, 13 N. Y., 556; *Lewis* v. *Palmer*, 28 id., 271; *Meech* v. *Patchen*, 14 id., 71.)

Johnson, C. The first question necessarily to be decided in this case is, whether the rolling stock of a railroad is personal property, or whether it is to be deemed constructively annexed to the road upon which it runs, so as in law to be regarded as part of the realty. If it be determined that rolling stock retains its character of personal property, then the question arises whether a mortgage of a railroad and its equipment needs to be filed under the statute of 1833, requiring mortgages of personal property to be filed when the possession of the property is not immediately delivered to the mortgagee. (Laws of 1833, chap. 279, p. 402.) The questions thus presented are not authoritatively determined in this State. The opinion of the Supreme Court has been given in four reported cases. The earliest was that of *The Farmers' Loan and Trust Co.* v. *Hendrickson* (25 Barb., 484), in which the judgment rendered in October, 1857, by Justices S. B. Strong, Eldredge and Davies, declared that as between mortgagees and judgment creditors the rolling stock was to be deemed fixtures, and consequently that such a mortgage did not need to be filed under the act of 1833. In this case the mortgage specified engines, tenders, cars, etc., as part of the property mortgaged, and the rights of the plaintiffs might have been sustained by holding either that the chattel mortgage law did not apply to railroad mortgages, or that engines and cars were fixtures. The

court rejected the former ground and placed the decision on the position that the rolling stock was part of the realty.

In *Stevens* v. *The Buffalo & N. Y. C. R. R.* (31 Barb., 590), decided in September, 1858, Justices GREENE, GROVER and MARVIN held that rolling stock was personalty, and that a mortgage thereof was required to be filed under the act of 1833. Elaborate opinions were written in support of these conclusions, in which the Hendrickson case, before cited, and that of *Coe* v. *Hart*, in the United States Circuit Court, before Mr. Justice McLEAN, that of *Corey* v. *The Pittsburgh & F. W. R. Co.* and *Mitchell* v. *Winslow* (2 Story, 690) were examined with the result before mentioned.

In December, 1859, Mr. Justice ALLEN decided (*Beardsley* v. *Ontario Bank*, 31 Barb., 619) the mortgage was of the railroad, real estate, chattels and franchises of the corporation. It was held that the rolling stock was not covered by the mortgage, not being part of the realty. The last two decisions were acquiesced in; the first, the case of Hendrickson, was taken to the Court of Appeals in 1863, and resulted in an order for reargument, and subsequently the case was settled. The case now under consideration is reported in 47 Barb., 109, before Justice SUTHERLAND, at Special Term in 1867. He held that rolling stock does not become part of the realty, and that it passed by the two mortgages in question, as specially named, and not as part of the realty. He also held that mortgages of the corporate property and franchises of railroads should not, as to the personal property covered by them, be deemed to be subject to the provisions of the chattel mortgage act of 1833. At General Term the case came before Justices INGRAHAM, SUTHERLAND and G. G. BARNARD, and the decision appealed from was affirmed, Judge INGRAHAM giving the only opinion. After declaring himself not prepared to accede to the opinion at Special Term, that rolling stock is in all cases to be considered as personal property, he holds that the intent of the parties is evident that the rolling stock should pass as part of the realty, and that such a construction should be given to the transaction. He;

further holds that the chattel mortgage act does not apply to
a mortgage executed by a railroad company under authority
of section 28 of the general railroad act of 1850.  That sec-
tion warrants a mortgage of the corporate property and fran-
chises of a railroad company to raise money for completing,
finishing or operating its road.   Such a mortgage was intended
by the legislature, the learned judge says, to be treated as a
mortgage of the road and its accessories, and, therefore, need
not be filed as a chattel mortgage.   While upon each propo-
sition involved, a majority of judges appear to have been
against the claim that rolling stock may be effectually mort-
gaged without filing, under the act of 1833, the question still
remains open for decision.

In respect to the legal methods of disposition, all property
is distributed by law under the head either of real or per-
sonal; and in order effectually to be disposed of, the act of
disposition must conform to the mode appropriate to the
kind of property.   What method shall be sufficient to trans-
fer property is matter of positive regulation by law; and it
is not in the power of parties to waive or alter, by their pri-
vate agreement, any of these regulations.   These regulations
have been adopted with regard not only to the interests of
the parties immediately concerned, but also with regard to
the interest of others in ascertaining the ownership of pro-
perty.   In regard to realty, a conveyance by metes and
bounds of a parcel of land carries with it everything which
the law recognizes as part of the realty, whether it was ori-
ginally personal in its nature or not, as fully and completely
as by the most minute enumeration and specification.   It
draws to itself and binds everything afterward made part of
the land by any method of annexation or affixing which the
law recognizes as effectual, whether actual or constructive in
character. (*Murdock* v. *Gifford,* 18 N. Y., 30; *Mott* v.
*Palmer,* 1 Comst., 564; *Leroy* v. *Platt,* 4 Paige, 77.)

In view of these well settled and universally recognized
rules, the cases—such as *Prim* v. *Emery* (32 N. Hamp., 484),
and *Pinnock* v. *Coe* (23 How., 117), which, as well on grounds

of reason as authority, labor to maintain that after-acquired rolling stock is bound by a previous mortgage, that in terms is declared to bind such after-acquired property—point irresistibly to the conviction that rolling stock is not part of the realty. No one ever doubted that a mortgage of land bound a house subsequently built upon it; nor that it bound any-thing originally personal which became afterward part of the land. The labored attempt to prove that rolling stock, acquired after the date of the mortgage, will be bound by it, shows how strongly the incongruity is perceived of treating it as part of the realty.

The general doctrine is, that things originally personal in their nature remain personal, though used in connection with land. All the implements of agriculture have their use only in the cultivation of land; and yet they are never thought to be part of the realty. Some element of annexation, usually physical in its character, is the common criterion for deter-mining whether things personal in their origin have lost that quality and become part of the realty. Generally, the connection is appreciable by the senses; so that what belongs to the land and what is personal may be determined by the inspection alone. Cases of constructive annexation are few, and act upon peculiar and obvious reasons of their own. Thus keys, which must be movable to answer their end, and which are a necessary part of the fixed locks to which they are adapted; sashes and window frames, and the old exam-ple of an upper mill-stone, removed to be picked, illustrate the same principle. Deer in a park, rabbits in a warren, doves in a dovecot, and fish in a pond, depend on a different reason. In these conditions they are reckoned not property at all; but any of them, caught and secured, becomes at once personal property. (Williams on Personal Property, 19.) In respect to all cases of constructive annexation, there exist both adaptation to the enjoyment of the land and localization in use as obvious elements of distinction from mere chattels personal. Even in respect to cases of actual annexation to the realty and consequent change of

character from chattel personal to realty, it is held that there ought to be the concurrence of actual annexation, of applicability to the use to which that part of the realty is appropriated with which it is connected, and lastly an intention on the part of the party making the annexation to make a permanent accession to the freehold. (*Potter* v. *Cromwell*, 40 N. Y., 287; *Voorhies* v. *McGinnis*, 48 id., 278.) Looking now at the rolling stock of a railroad, it is originally personal in its character, it is subservient to a mere personal trade, the transportation of freight and passengers. The track exists for the use of the cars rather than the cars for the use of the track. There is no annexation, no immobility from weight, there is no localization in use. The only element on which an argument can be based to support the character of realty is adaptation to use, with and upon the track. Even in respect to this, were the same contrivance adopted by a tenant for use in his trade upon leased lands, his right to remove both cars and track would be beyond question. It is perhaps fortunate that this question was not finally adjudicated in the early days of railroad enterprise, for then unity of ownership in track and cars and independence of roads upon each other seemed to render it possible to consider rolling stock part of the realty without introducing great inconvenience. At the present time independent companies exist, owning no tracks, whose trains run through State after State on the railroad track of other companies. It is no uncommon sight to see the cars of half a dozen companies formed into a single train and running from New York to Illinois and Missouri. It is impossible to deal with such property as part of the realty without introducing anomalies and uncertainties of the gravest character. Call cars and engines part of the realty; where shall they be taxed? Real estate is to be taxed at its site. What is the site of a railroad train running from New York to Buffalo in a day? Shall it be taxed in each town where the assessors catch sight of it rushing by at thirty miles an hour? Or if a judgment be docketed in one county on the line, will its lien

attach on each car as it is whirled past? And how shall con-
flicting lines in such cases be marshaled? The difficulties
which follow on admitting that rolling stock can be part of
the realty are partly disclosed in *Minnehaha Co.* v. *St. Paul
Co.* (2 Wall., 609). There the court is supposed to have
adjudged that a company owning a long line of railroad
and all the rolling stock upon it may assign particular por-
tions of rolling stock to particular parts of the road and mort-
gage such parts of the road with their particular portion of
rolling stock; that whether this had been done was a question
of intention, and that in the case before the court it had been
done. But upon examining the case it will be found that it
was so decided by the District Court in another suit, the decree
in which bound the parties then before the court, and con-
cluded them that the question spoken of could not be adjudi-
cated (p. 636). To this judgment thereof the justices dissent,
and in expressing their views say, " we agree that the rolling
stock upon this road covered by the several mortgages, and as
respects any other valid liens upon the same, is inseparably
connected with the road; in other words, is, in technical lan-
guage, a fixture to the road, so far as in its nature and use it
can be called a fixture." But it is a fixture extending over the
entire track of the road. It is not a fixture upon any particu-
lar division or portion, but attaches to every part or portion.

While I can see that views like these are accommodated to
railroads in the character of mortgagors in their relation with
the holders of their bonds, they cannot be allowed to prevail
without introducing inextricable confusion and uncertainty
in respect to the laws of taxation and of judgment liens, and
great embarrassment in dealing in respect to this class of pro-
perty. It is vastly better that changes of this sort, if
thought to be needed, should be introduced by legislation. In
my judgment, the want of the element of localization
in use is a controlling and conclusive reason why the character
of realty should not be given to rolling stock of a railroad.
For want of that element, rolling stock cannot be subjected
to the laws regulating taxation and liens on real property.

For a statement of all the decided cases to 1869, I refer to Redfield on Railways, vol. 2, p. 507, sec. 235, and notes.

Taking it, then, to be the law, that rolling stock of a railroad does not become part of the realty so as to pass by a conveyance of the land as part thereof, the next question is whether the law of 1833 requires a mortgage of such property to be filed where no change of possession takes place. That the case falls within the language of the law, is plain. It is universal in its requirement. If this case is to be excepted, it must be either on account of the character of the mortgage or of the property mortgaged, or on account of some provision of the statute law taking away the necessity of filing. A railroad corporation does not differ from any other corporation nor from any natural person in respect to the general obligation to obey the laws. It is just as likely to get a fraudulent credit as any other corporation, and can claim no special immunity. No distinction can be drawn to exclude a railroad corporation from the provision of this statute which would not equally exclude every trading corporation. This is obviously inadmissible.

The language of a general statute is applicable as well to corporations as to natural persons, and they do not need to be named as corporations in distinction from natural persons in order to be bound.

A difficulty is suggested under the second section of the statute as to the place of filing of a railroad chattel mortgage. The mortgage is to be filed in the town where the mortgagor resides, if a resident of this State, and if not a resident, then where the property mortgaged is at the time of the execution of the mortgage. The railroad in question in this case was located entirely in the county of Clinton, and its line was in the four towns of Plattsburgh, Beekman, Chazy and Mooers. A filing of a copy of the mortgage in those four towns would have justified any possible view of the requirements of the law. There is certainly no greater difficulty in adjusting the word resident to a railroad corporation than there was in applying to a corporation the term citi-

zen of a State.  This the Supreme Court of the United States found no difficulty in doing at an early day.  For many purposes a corporation is to be deemed resident where its place of business or chief office is situated, and at most it could only be deemed resident in all the towns in which any part of its line was located.  (*Buffalo & State Line R. Co.* v. *Supervisors of Erie,* 48 N. Y., 102 to 104.)  It is true that this case presented a question of residence in respect to taxation, but the authorities and the reasoning go strongly to show that the rule above mentioned should be deemed to fix its residence for all purposes.  There is, therefore, no such incongruity in applying the section in question to railroad corporations as will warrant us to refuse to apply to these corporations the broad and general requirement of the first section, especially as we find that they, in common with all other corporations and natural persons, are within its policy and spirit as well as its exact letter.

In respect to the character of the property mortgaged, no exemption from obedience to the law can be sustained.  A railroad and rolling stock may be owned by a private individual by purchase, or may be constructed by a private individual on his own land, and he may take fare for its use, such as he pleases to charge; unless he wants the public power of eminent domain, or the use of public property or easements, he has no occasion to consult anything but his own will and his own purse about constructing or running a railroad.  The character of the property itself cannot, therefore, furnish any exemption from obedience to the law.  Nor does the statute authority, conferred by the act of 1850 to mortgage for certain purposes corporate property and franchises, touch the question.  The statute is silent as to the manner in which the power shall be exercised.  It might as well be argued that a mortgage filed as one of personal property should, by this filing, operate to give priority as one of land, without being recorded, as to maintain the converse of the proposition.  The power is given, but to be effectually exercised the method must be pursued which is appropriate to the

kind of property. · What is real, must be dealt with as real; what is personal, as personal. This view of the statute is confirmed by the subsequent statute of 1868 (chap. 779, p. 1747), which enacts that mortgages by railroad companies of real and personal property need not be filed as chattel mortgages, if recorded as real estate mortgages, in each county in or through which the road runs.

Taking the law on these points to be as I have thus far stated it, the inquiry still remains to be pursued in respect to the rights of the parties, as affected by the relations of Vilas to the corporation, which was the mortgagor of this property. Vilas was a director of the railroad company during the whole period of the transactions in question. He and his co-directors were together clothed with the power of managing the corporate property and conducting the affairs of the corporation. From this position arose the duty of managing and conducting its affairs to the best advantage, and the obligation not to let the private interests of any individual director compete with his duty toward the corporation. Whether a director of a corporation is to be called a trustee or not, in a strict sense, there can be no doubt that his character is fiduciary, being intrusted by others with powers which are to be exercised for the common and general interests of the corporation, and not for his own private interests. He falls, therefore, within the great rule by which equity requires that confidence shall not be abused by the party in whom it is reposed, and which it enforces by imposing a disability, either partial or complete, upon the party intrusted to deal, on his own behalf, in respect to any matter involved in such confidence. (*Greenlaw* v. *King*, 3 Beaven, 49, 61; *Gibson* v. *Jeyes*, 6 Vesey, 278; *Ex parte Lacey*, 6 id., 627.)

Nor is it possible to limit the duty of a director of a corporation, in this respect, to the time while he is acting as a director under any special delegation of power, or is in attendance at meetings of the board. Such a limit would deprive the rule of almost all its efficacy, and would facilitate innumerable evasions of its force. That the power of a

director to act for or to represent the corporation may be so limited, in respect to its being bound by his acts, does not furnish any ground for saying that his fiduciary character and consequent duties are subject to the same limit. On the contrary, these must be held to continue so long as his directorship continues. He cannot, while director, divest himself of the knowledge which he has acquired in confidence of corporate affairs, or of the value of corporate property, nor be allowed to use it to his own advantage. (*Cumberland Coal Co. v. Sherman*, 30 Barbour, 568–572, and the cases there cited; *Benson* v. *Heathorn*, 1 Young & Col., 326.)

The application of these principles to the case in hand would lead to the conclusion that Vilas, while director, and in view of that relation only, could not become the purchaser of the property of the corporation, except subject to its right to elect to disaffirm the sale and demand a resale. As director, it was his duty to prevent a sale if possible; and if not, then to endeavor to have the property produce the highest price; and, in order to the attainment of these objects, to use the knowledge he had derived from the confidence reposed in him as director. As purchaser, on the other hand, it was his interest to pay as little as possible, and to use his special knowledge for his own advantage. Actual fraud or actual advantage do not need in such cases to be shown. (*Ex parte Lacey*, 6 Vesey, 627, and *Owen* v. *Foulkes*, stated in note 1 to that case.) Vilas, however, was not only a director; he was also the plaintiff in a judgment against the railroad company, and had a clear right to sell, upon execution on his judgment, the personal property of the corporation which was liable to sale on execution. Whether in this right he might not, at a sale under his own or under prior executions, purchase in protection of his own rights as judgment creditor, and hold property so purchased absolutely against the company, need not be determined in this case. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546; *South Baptist Church* v. *Clapp*, 18 Barb., 35.)

Assuming that he could not, and that it was the right of

the railroad company, at its election, to avoid Vilas' purchase and have a resale, the question remains whether the plaintiffs could avail themselves of that right in any case, and, if so, on what terms. The precise proposition, on the part of the corporation, is that the property, sold under the execution and bought by Vilas, should have brought more, and its right is to test this by a resale. Now, until it should have produced an amount exceeding that due upon all the executions, there could have been no surplus to which the corporation could have been entitled, and about which the plaintiffs, under their mortgage, which was a valid lien on the property sold as against the corporation, might have maintained with it a contest. The plaintiffs ·cannot go beyond their own equitable right, either ·directly or through the medium of the corporation; and their right does not arise until the executions are satisfied. (*Iddings* v. *Bunn*, 4 Sand. Ch. R. 277; 2 Sugden on Vend., 7th Am. ed., 896, § 34.) The plaintiffs' case is not framed or put upon any such ground; and we are, therefore, not called upon to consider what might have been their rights upon an offer to pay up the judgments on a condition of Vilas submitting to a resale. Under these circumstances the judgment of the General Term of April 6, 1868, affirming that of the Special Term of January 24, 1867, ought to be reversed.

The exceptions of the plaintiffs to the report of the referee ought to be disallowed, and the report of the referee as to its conclusion should be affirmed, but without costs to the defendants or any of them.

Reynolds, C. (dissenting). The mortgages, to foreclose which this action was brought, were each given to secure the payment of bonds of the railroad company for $200,000; one dated June 1, 1852, and the other July 13, 1853. Both mortgages covered all the real estate of the company, with its railroad, equipments and appurtenances, and the corporate and other franchises of the company, and both were duly recorded in the office of the clerk of the county of Clinton, where the

real property of the company was situate.  The mortgages were given and the bonds issued for the purpose of borrowing money and providing means for the completion of the railroad and its equipment, and obviously the whole property of the company, real, personal and mixed, was intended to be pledged as security for the payment of the bonds covered by the mortgages.  It may here be observed that the bonds were issued and the mortgages given under a resolution of the finance committee of the company of which the appellant, Vilas, was a member, and that he had knowledge of and was a part of the entire transaction.  Neither of the mortgages in question were ever filed anywhere as chattel mortgages under the statute of 1833.  Subsequently various judgments were obtained against the railroad company, and among them one in favor of Vilas for a large amount, and under executions issued upon them to the sheriff of the county of Clinton the engines, cars and rolling stock of the company were sold, and Vilas became the purchaser.  The controversy between the parties involves several questions, and among them the one whether the lien of the mortgages upon the rolling stock of the company, assuming it to be personal property, was lost by the failure to file them as chattel mortgages under the statute of 1833 (Laws of 1833, ch. 279, §§ 1, 2), there having been no change of the possession.

By that act, where there is no change of the possession of the mortgaged property, the mortgage is to be filed in the office of the clerk of the town or city where the mortgagor, if a resident of the State, resides; if not a resident of the State, then in the town or city where the mortgaged property is at the time of the execution of the mortgage.  While a corporation for many purposes is regarded as a citizen of the State by which it is created, it will be very difficult, if not impossible, to say in what town or city of the State it actually resides.  It either resides in some one city or town, or it has no actual domicile as natural persons have, or it has a fabulous and intangible residence in every city, town and locality within the territorial limits of the State by whose authority

it exists. For the special purpose of the taxation of its capital stock it is in this State made to have a local habitation in the town or city where its principal office is located. (1 Rev. Stat. [Edmonds' ed.], 362, § 6.)

For the special purpose of taxing its real estate (but for no other purpose) it has been held to be a resident of every town through which its road runs. (*The B.. & S. L. R. R. Co.* v. *The Supervisors*, 48 N. Y., 93.)

In these instances the residence of the corporation is fixed for a specific purpose only, and they afford no solution of the question where a corporation resides within the meaning of the act requiring the filing of chattel mortgages. If we adopt one view, it resides in a single city or town; if the other, it resides in many places at the same time. It is very obvious that the provision of the act of 1833 was intended only to apply to natural persons and not to corporations. When the law was enacted there were very few railroads existing in this State or the United States, and the system of issuing bonds for raising money for the purposes of construction and equipment and securing payment by mortgage upon all its property was entirely unknown. It was the invention and device of a much later period, and has received the sanction and is exercised under the authority of special legislation. It is, therefore, not too much to aver that in enacting the law of 1833 the legislature had no special intent to embrace a mortgage of the franchises and rolling stock of a railroad corporation within its provisions. If the letter of that law shall be deemed to embrace this description of property it is not necessarily conclusive, for that which is in the letter of the statute is not within the statute, unless it be within the intention of the makers. (*People* v. *Utica Ins. Co.*, 15 John., 381.) Or, as St. Paul hath it: "It is the letter which killeth, but the spirit which maketh alive."

Another provision of the act of 1833 is worthy of notice. In case of a non-resident of the State, the chattel mortgage is to be filed in the town or city where the mortgaged property is at the time of the execution of the mortgage. A

corporation existing under the laws of this State can never become a non-resident in any legal sense. It is incapable of migration, so that there can be no change of its domicil, if it has any. (*Bank of Augusta* v. *Earle*, 13 Peters, 519.) It may by comity extend its business operations into other juris- dictions. So, under our laws, may a corporation created by another State own and operate a railroad within our terri- torial jurisdiction, and, if in such case it should mortgage its real and personal property, it would be very difficult to say where it ought to be filed as a chattel mortgage under the act of 1833. Under the present system the money borrowed upon its bonds and mortgages by a railroad company is for the very purpose of completing the construction and equipment of its road. If it is in actual operation at the time of the execution of the mortgage, it is very obvious that the rolling stock must be scattered over its entire length, and what is in one place on one day is in another place on the day following. It can, from the very nature of the case, have no fixed locality in any one town or city, for comparatively few railroads are confined to such limits. By the general railroad act (Laws of 1850, chap. 140, § 28, sub. 10), corporations formed under it have power to issue bonds and " to mortgage its corporate property and franchises for completing, finishing or operating their railroad." This act imposes no condition of its being filed as a chattel mortgage to preserve its lien upon all the mort- gaged property. The railroad would be nothing without the rolling stock; and in the successful operation of the road consisted the principal value of the security of the bond- holders. It is not unlikely that in this case the money of the bondholders purchased the very property in question, and in equity they should have it; and that does no injustice to the appellant, for he knew all about it when he subsequently became a creditor of the company. He has no equity, and must stand alone upon the most rigid application of the very letter of the statute.

The act of May 9th, 1868, declaring that it should not be necessary to file, as a chattel mortgage, any mortgage

which had been or should thereafter be executed by any railroad company upon real and personal property, which has been recorded as a mortgage of real estate in each county in or through which the railroad runs, was declaratory of the law as it before existed. I am, therefore, of the opinion that the lien of the mortgages was, in no respect, impaired by the neglect to file them in any place as chattel mortgages.

This view of the case, if approved, renders the discussion of the other questions in the case unnecessary. Notwithstanding the relation of Mr. Vilas to the company, I am not prepared, without further consideration, to say that he might not, for the protection of his own private interest, become a purchaser at a public sale of the property in question, without being subject to any right of redemption from any source. But as to the question whether the rolling stock of a railroad company is to be regarded as fixtures or not, I have a decided opinion that they cannot be considered as any part of the company's real estate.

But for the reason before assigned, I think the judgment below should be affirmed, with costs.

All concur for reversal, except REYNOLDS, C., dissenting.

Judgment reversed.