Barker, P. J., {after stating the foots as above.)
Upon the facts as found .by the trial court, the complaint was properly dismissed upon the merits as a •correct legal conclusion. Unless the evidence fairly established a state of facts not found by the trial court, the judgment should be affirmed. The trial court based its judgment upon the facts found by it, viz., that the purchase of the property by the defendant Hanna, and the leasing of the mill to him, were honest and fair transactions, and free from fraud, and on its refusal •to find that Woodruff at the sale acted as the agent of Hanna, and in viola *624 tion of the duty which he owed the corporation, of which he was one of its-trustees and its general superintendent. After a careful study of the case, our minds are brought to the conclusion that the evidence establishes beyond-all fair disputation a series of facts which calls for a reversal of the judgment, and setting aside the sale on the ground that Woodruff at the sale acted for and in the interest of Hanna and the purchaser, in violation of the duty which he owed the corporation as trustee and agent. If the plaintiff is required to-show as a fact, before he is entitled to the relief demanded, that Hanna, in-buying the judgment, and purchasing the property at the sale, was guilty of an intentional fraud, by combining and conspiring with Woodruff to cheat- and destroy the corporation and its creditors, then we are not prepared to say that the judgment should be set aside on the ground that the findings of fact on til at subject are contrary to the weight of evidence. The judgment was-valid, and the same was a lien on all thé property, both real and personal, owned by the company, and Hanna was the owner thereof, and his right to-enforce the collection by sale of the personal property, and to become a purchaser at such sale, is not questioned by the receiver. All of the facts and circumstances which transpired, and which the receiver claims invalidate the-sale, occurred after the transfer of the judgment to Hanna, and at the time- and place when the sale took place. The company was insolvent. When Hanna purchased the judgment, he knew that it was greatly embarrassed in its financial affairs, if he was not conscious of its insolvency. We have not reached the conclusion that Hanna knew, as a matter of fact, that the company was insolvent, and.leave that question undetermined, as unnecessary to-be decided by this court in disposing of this appeal.
We conceive the most important question of fact to be, did Woodruff at the-sale act in the interest of Hanna, and assist him in purchasing the property for the sum bid for the same, in disregard of the duty which he owed the company ? All the evidence, and every fact and circumstance which directly or remotely bears on this vital question, should be recalled and considered with attention. The articles levied upon and sold embraced every kind of personal property which is usually used for the manufacture of paper, including raw material in store, material in process of manufacture, paper ready for sale on the market, detached machinjery, teams, wagons, office furniture, and miscellaneous articles, all of the nominal value of $12,000, as-estimated by the trial court. At the time of the sale, Mr. Hanna had never seen any of the property, and all the information he had concerning its character was by the inspection of an inventory of the same, in which its value was not stated, nor was there any description of its quality set forth therein, so that an intelligent opinion could be formed as to its real or approximate value. Neither before nor during the sale did Mr. Hanna see or inspect a single item of the property, except the office furniture. At the time of the sale, he gave as a reason, why he did not examine the property that he was unacquainted with its value, and it would not aid his judgment to do so. As a witness on the stand he stated why he relied on Mr. Woodruff to classify the property, and fix the price to be paid for each lot as it was offered for sale by the sheriff, and his evidence on the subject is as follows: “The sheriff announced that he was ready to begin his sale and read his announcement from the paper,—can’t remember what it was in detail,—and the sale began. I was furnished with an inventory of the property. I declined to go over to the place and view it, because it was stormy, and I would not have known any more by viewing it, as to its value, than I did in the office. I relied upon Mr. Woodruff and Judge Bangs to give me the inventory and the value of the property, which I knew nothing about. I did not pretend to know anything about the value of paper pulp, or anything connected with the paper business. The schedules shown were divided into two lots, and as the sheriff offered them for sale I bid upon it, and I consulted— Or, as a matter of fact, Mr. Woodruff had the memo *625 randum of the goods offered, and put down in pencil what he believed to be its value, and I bid upon memoranda. The figures he gave were supposed to represent the value of the property, and the property was bid off in that way, until the sale was concluded.” On his cross-examination he further stated: “Judge Bangs, Mr. Woodruff, and I went directly from cars to the office, and had some lunch there. We had the inventory there that Mr. Woodruff had shown me. It was the one which had been prepared, and which Mr. Wood-ruff had, on which the lots were marked off in the order and way in which the property was to be sold. The amount bid was not marked on in pencil at that time. The mark 1 Bid ’ was marked at the time the lots were offered, and Mr. Woodruff made the figures, and I bid the amount so indicated. We returned to Buffalo. The papers were drawn, and I left the property in charge of Mr. Woodruff. I never went back to Bath island while the mill was running, nor before it was turned down. ” As bearing on the question with great signification, it should also be mentioned that Hanna and Woodruff were personal friends, and the former purchased the judgment the day before the sale took place, at the earnest solicitation of the latter, who gave him assurances that the judgment was well secured by a levy upon the property sold.
Mr. Woodruff, who was examined as a witness in behalf of the defendant, testified, in substance, that he arranged the property for sale on consultation with Mr. Hanna, and advised him as to the sums which be should bid on the various parcels sold. It was also arranged between Hanna and Woodruff before the sale took place that, if the former purchased the property, the latter should act as his agent in superintending the mill and marketing the paper which was to be manufactured from the material purchased. It is obvious from these facts and circumstances that Woodruff acted for and in behalf of Hanna in everything which he did at the sale. Mr. Hanna did not inspect the property sold, nor have any opinion as to the value of the property, but confined that question to Woodruff, who named the amount of the bid, and it was acted upon by Hanna without any further inquiry. It is impossible to resist the conclusion that it was well understood and arranged before the sale, between Hanna and Woodruff, that the latter was to attend the sale and act for and in behalf of Hanna. The duties imposed on Woodruff, as trustee) and agent, disqualified him from becoming the purchaser at the sale for himself, and also from acting as a bidder for another. Davoue v. Fanning, 2 Johns. Ch. 252; Coal Co. v. Sherman, 30 Barb. 553; Fulton v. Whitney, 66 N. Y. 548; Hoyle v. Railroad Co., 54 N. Y. 329. The purchase by a trustee, directly or indirectly, of a trust-estate which he is empowered to sell as trustee, whether at public auction or private sale, is voidable at the election of the beneficiary of the trust; and this rule will be strictly enforced by the courts without regard to the question of good faith or adequacy of price, or whether the trustee has or has not an interest in the purchase. Scholle v. Scholle, 101 N. Y. 171, 4 N. E. Rep. 334; 2 Pom. Eq. Jur. § 958. In this state the rule has been enforced with unyielding uniformity. Where the duties imposed arise out of the relation of principal and agent, the rule is applicable to the latter, and regulates and defines his duty towards his principal, and is applied by the courts with the same unvarying firmness. Ex parte Bennett, 10 Yes. 381; Verplanck v. Insurance Co., 1 Edw. Ch. 47; Railroad Co. v. Blakie, 1 Macq. 461; Davoue v. Fanning, and Coal Co. v. Sherman, supra.
One of the reasons why the plaintiff in this class of cases is not called upon to prove fraud on the part of the trustee or agent is that under the circumstances it is in his own power to conceal it, and therefore the law infers fraud from the circumstances. The duty was imposed on Woodruff, so far as it was in his power, to see that proper means were taken to give publicity to the sale, and bring it to the attention of persons who would be likely to become bidders. This he did not make any attempt to do, and we think it may be truthfully said that he purposely omitted .his duty in this respect, that there *626 anight be no competition at the sale, and the property be struck off to Hanna •at the price whicli he himself should name. What would an individual debtor ¡have done under like circumstances, who was desirous that his property should ibring a fair price at a sheriff’s sale at which it was advertised to be sold? If he was not in collusion xvith some person who was expecting to become a purchaser at a price less than its actual value, he would make every possible effort to secure the attendance of such persons who were dealers in the kind of property which was to be sold, and not have contented himself to suffer the sale to take place with no other bidder,,present except the judgment creditor. The sale took place in a village of four or five thousand inhabitants, in which there were located and in operation other paper-mills, and no notice was given to the owners of those mills of the sale, and that a large amount of property was to be sold, consisting of stock on hand suitable to be used in the manufacture of paper. It is manifest that if Mr. Woodruff had been active in securing the attendance of other bidders, some of the property that was sold for no more than one-half of its market value would have brought a greater sum. Mr. Woodruff was familiar with the market value of the raw material on hand, and Hanna was not. At the saleMr. Woodruff deserted his post, and shunned his duties, without having any excuse for his action, and the law charges Hanna with having notice of this breach of duty on the part of Woodruff, as he had been informed that Woodruff was both a director and the general managing agent of the company. While it is not necessary for the plaintiff to show that the property sold for an inadequate price, in order to obtain relief the subject may be pursued in this connection for the purpose of illustrating the wisdom of the rule that an agent or trustee for the Sale of property cannot divest himself of that character without the consent of his principal *or the beneficiary, and use the knowledge which he possesses for the benefit of himself or another. One of the lots into which the property'was divided and sold consisted of “12 trucks, stuff-boxes, cotton waste in warehouses, 60,000 pounds, cotton waste in mill, 20,000 pounds, 50 bales of rags in mill and warehouse, 50 bales of jute.” It appears by the proofs that the cotton waste, rags, and jute had been purchased to be used in the factory, and remained in the original packages, and they had a well-known market value, and could have been sold in most of the large towns and- cities. Estimating the market value of these articles at the lowest price given by any witness, including Mr. Woodruff, their aggregate value was $2,000, and they were bid in at the sale for $1,000. There was also included in this lot other property, the value of which does not appear. One lot of paper, consisting of 31 rolls, ready for market, and of the value of $783.61, was sold for $300. Another lot at a railroad station for shipment, worth $570, sold for $200. As these articles were all staple goods, and salable at all times, at the market quotations, it furnishes abundant evidence that Mr. Woodruff sought to divest ■himself of the information which he possessed as to the value of the property for the benefit and advantage of the purchaser. There was other proof which tended to show that most of the other property sold for a sum considerably less than its actual value, and there is no satisfactory proof that any of the -property sold for any more than its real value in the condition in which it was ■offered for side. We therefore do not agree with the trial court that the property sold in the aggregate for afair and reasonable sum. The material in the process of manufacture and some of the other articles would naturally sell at a public sale, even where there was competition in bidding, at a low price and for much less than their intrinsic value, if used in connection with the factory, but the raw material in bales, and the paper manufactured and ready for market, had a standard market value above the aggregate sum paid for all the property.
The receiver also contends that the sale was voidable, on his election, for the reason that the sheriff disregarded the requirements of the statute, which *627 provides that personal property must be offered for sale in such lots and par•cels as are calculated to bring the highest price; also that personal property shall not be offered for sale unless it is present and within view of those attending the sale. Code, § 1428. It is substantially found by the trial court •that neither of these provisions were observed by the sheriff, and our examination of the case inclines us to the opinion that they were totally disregarded, and that the sale was voidable for that reason, at the election of the company. Warring v. Loomis, 4 Barb. 484; Bakewell v. Ellsworth, 6 Hill, 484; Frederick v. Wheelock, 3 Thomp. & C. 210; Stief v. Hart, 1 N. Y. 20; Shimer v. Mosher, 39 Hun, 153.
The respondents contend that the provisions of chapter 314 of the Laws of 1858 do not confer upon the receiver the right to interfere and set aside the ■sale for an irregularity of this character. We need not, in disposing of this appeal, pass upon that question, as we place our reversal of the judgment on ■the ground already stated. Out of the proceeds of the sale, Hanna, as the •owner of the judgment, will be entitled to receive the full amount of the bids which were credited upon the execution, and it also seems to be equitable and just that upon the accounting he should be allowed the actual costs and expense of manufacturing the raw material into paper, as on the argument it was tacitly conceded that the value of the property was increased to an amount •equal to the cost of manufacture. The judgment should be reversed, and a new trial granted, with the costs of this appeal to abide the final award of costs. All concur, except Bradley, J., not voting.