PIERSON v. CRONK.

(*Supreme Court, Special Term, New York County.* November, 1890.)

1. ABATEMENT AND REVIVAL—WHEN MOTION TO REVIVE MAY BE MADE.

The death of plaintiff during the progress of the trial, and before the case has been submitted for decision, is no ground for dismissing the action, as a motion to revive may be made at any time before judgment.

2. CORPORATIONS—LIABILITY OF DIRECTORS—WASTE OF ASSETS—NOTICE OF COUNSEL.

The entire assets of an insurance company were transferred to another company, in violation of law, and during such transfer a large sum of money was withdrawn from the treasuries of both companies to procure loans in order to perfect the transfer, thereby impairing the capital of both companies, and injuring creditors and policy-holders. *Held*, that a director of both companies at the time of the withdrawal of the funds was liable for the waste of the assets, at the suit of a receiver of the company, whose assets were transferred; and the fact that the transfer was made on the advice of counsel is no protection.

3. SAME—ACQUIESCENCE BY CREDITORS.

The fact that the policy-holders of the original company received dividends on their policies from the consolidated company does not estop them, or the receiver representing them, from maintaining an action against the directors of the original company for wasting its assets by the consolidation.

4. SAME—EVIDENCE.

Evidence that the illegal consolidation of the two companies resulted in taking from the consolidated treasuries an amount largely in excess of the outstanding obligations of the original company, and that the deficiency continued until the company, unable to meet its obligations, passed into the hands of a receiver, is sufficient to show that the deficiency resulted from the consolidation.

This action was commenced on March 6, 1879, by Henry R. Pierson, as receiver of the Widows' & Orphans' Benefit Life Insurance Company, against Andrew W. Morgan and 15 other defendants, to recover damages for waste, alleged to have been committed by them as trustees in their own wrong of said company. After issue joined, but before trial, the defendant Morgan, on March 31, 1886, departed this life. In June, 1888, this action was severed, and revived against the above-named defendant Justine N. Cronk, as administratrix, etc., and issue was joined by her answer in September, 1888. The action was brought on for trial in November, and testimony taken at different intervals during a period of several weeks, and before submission the former receiver, in January, 1890, died, and the present plaintiff was submitted in his place. For former reports, see 4 N. Y. Supp. 898, 5 N. Y. Supp. 53, and 7 N. Y. Supp. 573.

*William C. Trull*, for plaintiff.   *R. H. Vernon*, for defendant.

O'BRIEN, J., (*after stating the facts as above.*) The defendant now moved to dismiss the action, on the ground that there has been a mistrial, the original plaintiff having died before the submission of the case for decision, and there being no order directing that the pleadings, proceedings, and evidence already had and taken stand in the cause so revived. The motion to revive can, in my judgment, be made at any time before judgment; and the failure to enter the order upon such motion can be cured by having the same done prior to the entry of the judgment.

The motion to strike out the testimony of defendant's intestate with reference to the loan to Mr. Gill and the Guardian Mutual Life Insurance Company, should be granted; but the other testimony sought to be stricken out should be allowed to remain.

The defendant also moved to dismiss the complaint on several preliminary grounds, which may be briefly noted: *First*, that the cause of action did not survive against the legal representative of Morgan, deceased; *second*, that there is no provision of law which authorized the revival or continuance of an action of tort against the legal representatives of one of several wrong-doers, sued jointly; *third*, that the action should not have been severed; *fourth*, that the other defendants originally included in the action should have been brought in as defendants in this action. Since the trial, the appeal taken from the order reviving the action against the defendant to the court of appeals has been dismissed. As to the other objections, they were necessarily involved in the motions made and decided adversely to defendant, who, if she felt aggrieved, has a remedy by appeal.

Without spending more time upon these preliminary objections, it remains to be considered whether, upon the facts as proved, the plaintiff is entitled to judgment against the defendant. The defendant's intestate was a director of the Widows' & Orphans', and also of the Mutual Protection, and he is sought to be charged with the wrongful wasting and misapplication of the funds of the former company. The facts are in some respects identical with those appearing in the case of *Pierson* v. *McCurdy*, 33 Hun, 521. In October, 1871, a scheme was set on foot for the acquisition of the assets and stock of the Widows' & Orphans' Company, and for the reinsurance of the risks of that company by the Mutual Protection Company. The defendant's intestate was a trustee and one of the officers of the Mutual Protection Company. An agreement was made under which the Mutual Protection Company was to purchase, and afterwards did purchase, the majority of the stock, and all the assets of the Widows' & Orphans' Company, and reinsured all the risks, and assumed the liabilities, of that company. It was intended to acquire all the stock of the Widows' & Orphans' Company, and to pay therefor par and accrued interest in gold. A majority of the stock of the Widows' & Orphans' Company was thus obtained at the stipulated price. · At the time when the agreement was made, and also when it was carried into effect, the Widows' & Orphans' Company was the owner of property and assets of the amount in value of $1,643,-418.13, and its liabilities upon its outstanding risks and otherwise, and for its capital stock, amounting to the sum of $200,000, were the sum of $1,745,-078.40. The excess of its liabilities over its assets and property was such as to leave its capital stock impaired to the extent of $101,660.23, from which latter sum, if we deduct the tontine liability of $20,445.40, which has been included, there would still remain a deficiency of $81,214.93. In October, 1871, the Mutual Protection had liabilities, including capital of $100,000, of $460,542, and its assets were $335,994.80. Between October 5th and November 14th $156,000 was paid for stock of the Widows' & Orphans' Company from money borrowed by the Mutual Protection Company, all of which, together with the $25,000 paid as commissions upon the sale, was replaced by the assets of the Widows' & Orphans' Company. On November 11th a contract of reinsurance was made, and thereafter the entire assets of the Widows' & Orphans' Company were transferred to the Mutual Protection Company, after the intestate became a director of the former company, so that before December 1st $186,582.50 had been passed over, of which the sum of $163,303.15 went to pay the loans of the Mutual Protection Company, made to purchase the stock of the Widows' & Orphans' Company, and pay commissions. Thus, in the process of the absorption of the Widows' & Orphans' into the Mutual Protection, nearly $300,000 were withdrawn out of the consolidated treasury, all ready impaired, thus rendering impossible the discharge of the obligations of either company under the law. As said in *Pierson* v. *McCurdy*, 33 Hun-520: "This was relied upon as an unlawful transaction in the suit brought by the receiver; and, as these corporations were limited in the exercise of their authority to the powers conferred upon them by the statutes of the state,

that probably was its nature, for it was practically and in effect an amalgamation of two separate and independent corporations into one, the larger being absorbed by the smaller, and that was authorized by no provision contained in any statute relating at that time to corporations of this description. The law did allow one company to reinsure the risks taken by another, but this was not an agreement or arrangement of that character. The purpose and design was not so much to reinsure the risks of the Widows' & Orphans' Company as it was to acquire its property and management, and afterwards to proceed with the transaction of its business. What was intended to be and was actually accomplished was not the reinsurance of the risks of one company by the other, but it was the bodily acquisition of the company itself and all its property, and the agreement to reinsure its risks as an incident only in the transaction; and that was clearly an unauthorized and unlawful proceeding." It having been thus decided that it was an unauthorized and unlawful proceeding, it remains to be determined to what extent the defendant is liable by reason of his participation therein.

The intestate was a director in both companies,—in the Mutual Protection when it procured the loan to purchase the stock in the Widows' & Orphans', and in the latter before the transferring of all its assets and the appropriation of part thereof to the payment of the loans made to purchase its stock. It is unnecessary to determine whether or not a director of an insurance company is strictly and technically a trustee. As stated in *Hoyle* v. *Railroad Co.*, 54 N. Y. 314, whether a director of a corporation is to be called a trustee or not in a strict sense, there can be no doubt that his character is fiduciary. In *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52, 61, which was a suit in equity, brought by the stockholders against the directors of a bank to recover damages sustained by negligence and official misconduct, the court, in giving its opinion, said that "the rule of liability in such cases is well stated by Chancellor WALWORTH, in *Robinson* v. *Smith*, 3 Paige, 222: ' The directors of a corporation who willfully abuse their trust, or misapply the funds of a company, by which a loss is sustained, are personally liable as trustees to make good that loss, and they are also liable if they suffer the corporate funds to be lost and wasted by gross negligence and inattention to the duties of their trust.'" Applying this rule to the facts presented, and having in view the then condition of the two companies, and the results that would necessarily follow from the withdrawal of nearly $300,000 of the assets of the two companies, and remembering, too, that the transactions themselves were unlawful, it would seem reasonably clear, as a legal proposition, that if loss resulted, and the policy-holders and creditors of the company were injured, the defendant's intestate and associate directors, who produced this condition of affairs, should be held liable to the full extent of the damage caused. The only suggestion made upon which these unlawful and unauthorized acts are sought to be justified, and by which the liability is sought to be evaded, is that all these transactions were carried out under the advice of able and experienced counsel. This plea, however, will not avail. Perry, Trusts, § 927, thus states the law: "If through any misapprehension on the part of a trustee he makes a payment to a person not authorized by the terms of the trust to receive it, he will be held personally responsible for the misapplication to the persons who can establish a better right; and the advice of counsel will not protect him in making a wrong payment. There is a *dictum* to the contrary in *Vez* v. *Emery*, 5 Ves. 141, but the general rule prevails. But if trustees act in good faith in such case, and under the advice of counsel, the court will not impose costs."

It is also claimed that whatever may have been the nature of the contract of reinsurance, whether it did or did not give the holder of a policy of the reinsured company the right to rescind his contract with that company and sue for damages, yet if he should adopt the contract of reinsurance, and

enforce it against the reinsuring company, he thereby ratifies and confirms the transaction, and cannot thereafter repudiate the same. The policy-holders of the Widows' & Orphans' were permitted to participate in the assets of the Mutual Protection Company, and did receive, by the order of the court, dividends upon their policies; but I fail to see how a policy-holder in the Widows' & Orphans', or a receiver, in bringing an action for the unlawful and negligent acts of the directors of the Widows' & Orphans', would be thereby prevented from maintaining the action. There might be some force in this contention if the plaintiff here were suing a director of the Mutual Protection, or a policy-holder of the Widows' & Orphans', who had accepted a dividend of the Mutual Protection, and was seeking to avoid and set aside the contract of reinsurance. That, however, is not the case. The action is brought to charge the defendant as a director of the Widows' & Orphans', and it would be extending the doctrine of estoppel or ratification very far to hold, because the policy-holders of the Widows' & Orphans' sought to obtain a payment upon their policies out of assets which formerly belonged to them, and which had been transferred to another company, that thereby all actions of policy-holders or a receiver for the misconduct or wasteful acts of their own directors were barred. It will thus be seen that I have reached the conclusion that the defendant's intestate and his associates, by violating their duty to the Widows' & Orphans' Company, are chargeable with the unlawful acts and negligent waste which have resulted in injury to the policy-holders and creditors of the company. It has been shown that the obligations still outstanding are $189,123.24. It is asserted that there is no proof that such deficiency was caused by the unlawful or negligent acts complained of, and stress is laid upon the language used in *Pierson* v. *Cronk*, 7 N. Y. Supp. 578, wherein Mr. Justice DANIELS, on the facts in that case, says: "There may have been a remote probability that such was the fact, and that, if it had not been for the consolidation of the two companies, the persons represented by the receiver might have been paid the amounts maturing upon their policies; but this was in the nature more of a conjecture than proof, and the case was left in that condition where the court could very well hold that the failure of the holder of these policies to obtain indemnity did not result from any failure in the management and conduct of the affairs of the Widows' & Orphans' Company, or that the company would have been in a solvent condition if this consolidation had never taken place." Here, however, the facts are different from those appearing in the case cited. The proof here shows that the result of the consolidation was to take from the consolidated treasury nearly $300,000, and thus to render at that time payment of the liabilities an impossibility. There is also evidence to show that this state of facts continued down to the time when the company, unable to meet its obligations, passed into the hands of a receiver. It seems to me, in the absence of any proof to the contrary, that the acts complained of resulted directly in eventually producing the deficiency which now exists.

In addition to the amount originally taken from the treasury of the Widows' & Orphans' to pay the loans of the Mutual Protection, certain other claims are made for the negligent and wasteful application of the funds in payment of salaries and commissions. It is unnecessary, however, to consider these separately, because, if the defendant is liable for the amount paid out in the purchase of the stock in the Widows' & Orphans', this, with interest, would be sufficient to liquidate the entire outstanding indebtedness of the company. No accounting in this view, therefore, is necessary, for it must be conceded that, if liable at all, the defendant is liable for an amount greatly in excess of the present deficiency. The plaintiff, however, is not entitled to recover more, and it will obviate the necessity and expense of a reference by having the judgment in this case equal the amount of the deficiency.

In my conclusion I have not overlooked the hardship that will result in fastening the whole responsibility upon one of a number, and it would seem but just that those who participated with the defendant's intestate should each bear his proportionate share in the liability incurred. The severance of the action, and the right to maintain it against the defendant alone, as was already stated, has been the subject of decision by other judges, and is therefore conclusive on me. This is equally true in regard to the question, presented and urged with much force, as to the statute of limitations. This question was argued before Mr. Justice PATTERSON, who, in his opinion, says, (20 Abb. N. C. 428:) "My first impression was that this case is one in which a full and perfect remedy could have been had at law, in which rights will not be changed simply by a change of forum, and hence the six-years bar of the statute of limitation applies. But in *Brinckerhoff* v. *Bostwick*, 99 N. Y 185, 1 N. E. Rep. 663, it was decided that a cause of action, similar in principle to this, is one in equity, to which the ten-years limitation applies." After a careful consideration, therefore, of all the questions presented, I am of opinion that the plaintiff is entitled to judgment against the defendant for the sum of $189,123.24.